# EXHIBIT "A"

FILED - VM
GLYNN CO. CLERK'S OFFICE
Filed 4/21/2021 11:41 AM
Accepted 4/21/2021 3:20 PM
CASE # CE21-00448

CLERK SUPERIOR COURT

IN THE SUPERIOR COURT OF GLYNN COUNTY
STATE OF GEORGIA

| | |
|---|---|
| ROY J. BOYD, JR., <br><br> Plaintiff, <br><br> v. <br><br> THE THOMSON CORPORATION, and WEST PUBLISHING CORPORATION, d/b/a FindLaw, Super Lawyers, and LawInfo, <br><br> Defendants. | Civil Action No. CE21-00448 <br><br> Judge Scarlett |

## COMPLAINT FOR DAMAGES

Plaintiff Roy J. Boyd, Jr., hereby files his Complaint against Defendants The Thomson Corporation and West Publishing Corporation, d/b/a FindLaw, Super Lawyers, and LawInfo, showing this Honorable Court as follows:

### I. PARTIES, JURISDICTION & VENUE

1. Plaintiff Roy J. Boyd, Jr., is a citizen and resident of Glynn County, Georgia. Mr. Boyd is the sole and managing member of the Boyd Law Firm, LLC.

2. Defendant The Thomson Corporation is a Connecticut corporation with its principal executive office in Stamford, Connecticut. Upon information and belief, Defendant The Thomson Corporation can be served with process at Metro Center, One Station Place, Stamford, Connecticut 06902.

3. Defendant West Publishing Corporation is a Minnesota corporation with its principal place of business at 610 Opperman Drive, Eagan, MN 55123. Upon information and belief, Defendant West Publishing Corporation can be served with process through its registered agent, Corporation Service Company, 7

Technology Parkway South, Suite 300, Norcross, GA 30092.

4. The causes of action detailed below originated and the tortious injury at issue occurred in Glynn County, Georgia.

5. Pursuant to OCGA § 10-1-399(b), at least 30 days prior to the filing of this action, Mr. Boyd delivered to Defendants written demands for relief, attached hereto as Exhibit 1. The demand identified Mr. Boyd as the claimant and reasonably described the unfair or deceptive act or practice relied upon and the injury suffered. Neither Defendant tendered settlement or otherwise responded to the demand.

6. Jurisdiction and venue are proper in this Honorable Court.

## II. FACTUAL ALLEGATIONS

7. FindLaw, Super Lawyers, and LawInfo are Thomson Reuters services owned by Defendants. These online services provide legal information for consumers and small businesses as well as internet marketing solutions for law firms.

8. Mr. Boyd is a plaintiff's attorney in Brunswick, Georgia, who used to practice with attorney Bob Killian as Killian & Boyd, PC. When Mr. Boyd and Mr. Killian practiced together, their firm had an online Super Lawyers Premium Profile.

9. In January of 2018, Mr. Boyd and Mr. Killian dissolved their partnership and founded separate law firms. Mr. Boyd founded the Boyd Law Firm while Mr. Killian started the Killian Law Firm.

10. Pursuant to the dissolution, Mr. Boyd accepted all financial obligations of the prior law firm, including the advertising obligation for Defendants. Mr. Boyd

thus continued to pay for the same plan, albeit for the Boyd Law Firm and not Boyd & Killian.

11. Defendants knew that Mr. Boyd's advertising plan was to advertise for Roy Boyd and Boyd Law Firm. Mr. Boyd paid for his Super Lawyers service on a monthly basis. He was convinced by Defendants to use tracking URLs and phone numbers so that Defendants would have a tracking of every call or internet inquiry made for Roy Boyd or Boyd Law Firm.

12. Meanwhile, in February of 2018, Mr. Killian apparently took out a new and different advertising plan with Defendants' services. Through their negligence, Defendants included everything involving Roy Boyd in Mr. Killian's new contract with them, completely ignoring their contract with Roy Boyd and Boyd Law Firm. After Mr. Killian's new plan for the Killian Law Firm, through Defendants' negligence, Defendants' services began redirecting to the Killian Law Firm all inquiries to Defendants' services for Mr. Boyd or the Boyd Law Firm through phone calls to Mr. Boyd's tracking phone numbers or visits to the tracking URLs for Boyd Law Firm, LLC. Mr. Boyd had no idea that any of this was happening. Based upon information and belief, neither did Mr. Killian. Through the Killian Law Firm contract with Defendants, anytime somewhere searched for Roy Boyd or Boyd Law Firm on the internet, all of Defendants' entities directed them to the Killian Law Firm. Neither Roy Boyd nor the Boyd Law Firm had any privity with the Killian Law Firm's contract with Defendants.

13. Almost two years later, on May 4, 2020, Defendants' employee Donald

Hochbrunn contacted Mr. Boyd on Defendants' behalf regarding renewing Mr. Boyd's Super Lawyers Premium Profile.

14. On May 5, 2020, Mr. Boyd informed Mr. Hochbrunn of his plan to renew his Super Lawyers Premium Profile for 12 months, at a cost of $165.30 per month. Also on this date, Mr. Hochbrunn provided Mr. Boyd with a link to his Premium Profile.

15. On August 21, 2020, Mr. Boyd discovered and informed Defendants that the URL link assigned to his Super Lawyers profile led to a web address for Killian & Boyd, Mr. Boyd's former law firm with Mr. Killian. This law firm no longer existed, nor did its website. All of this was done through the contract involving the Killian Law Firm, Bob Killian, and Defendants.

16. Mr. Boyd also noticed and informed Defendants that the tracking telephone number provided by Super Lawyers on Mr. Boyd's profile was (912) 999-2308. When dialed, that number connected the dialer to the Killian Law Firm rather than the Boyd Law Firm. All of this was done through the contract involving the Killian Law Firm, Bob Killian, and Defendants.

17. Mr. Boyd also discovered, all Thomson Reuters services which were supposed to advertise for the Boyd Law Firm were actually publishing a tracking phone number for the Killian Law Firm. All of this was done through the contract involving the Killian Law Firm, Bob Killian, and Defendants.

18. Likewise, a link on the LawInfo website for Mr. Boyd sent visitors to a web address for the Killian Law Firm. All of this was done through the contract

involving the Killian Law Firm, Bob Killian, and Defendants.

19. On a page that was supposed to be dedicated to the Boyd Law Firm, the Law Info website displayed a logo for the Killian Law Firm. (Exhibit 2). All of this was done through the contract involving the Killian Law Firm, Bob Killian, and Defendants.

20. On September 2, 2020, Michelle Juelfs, an employee of Defendants', acknowledged that incorrect information was published on Mr. Boyd's online profile. (Exhibit 3, p. 7). She stated, "We are working with the Super lawyers team to get to the bottom of how this happened." (Id.). She also stated that the incorrect information would be corrected and assured Mr. Boyd that the changes would be shown in 24 hours. (Id., p. 6).

21. On September 3, 2020, Mr. Boyd emailed Defendants stating that the changes had not been made to his Super Lawyers profile. (Id., p. 2). In response, Ms. Juelfs again admitted that Defendants published incorrect contact information on Mr. Boyd's profile and stated that a credit was due for these errors. (Id., p. 1). To quote Ms. Juelfs, "I understand this is a huge issue and this is not okay. We are working to make this right." (Id.). Ms. Juelfs also wrote, "[N]o matter how this happened it should have never happened, and we do understand this is not okay." (Id., p. 2).

22. As a result of Defendants' actions and/or omissions, the Killian Law Firm has received all Thomson Reuters-related inquiries for Mr. Boyd or the Boyd Law Firm since February 2018 through tracking phone numbers and URLs

supposedly directing potential clients to Roy Boyd or Boyd Law Firm, LLC.

23. Defendants have admitted that they knew since February 2018 that this was happening and did not do anything about it, despite the fact that Defendants continued to bill Mr. Boyd and Boyd Law Firm to advertise on their platforms.

24. As a result of such inquiries being diverted to a competitor's law firm, Mr. Boyd has lost cases and sustained damages.

25. Upon information and belief, to this day Defendants still have not corrected the information on the sites supposedly dedicated to the Boyd Law Firm, and Defendants continue to refer to the Killian Firm inquiries for Mr. Boyd and the Boyd Law Firm. This is despite the fact that Mr. Boyd and his assistant have sent Defendants emails asking Defendants to fix the problem. (Exhibit 3).

26. Defendants have admitted that they have sent through their advertising platforms for Mr. Boyd and Boyd Law Firm, LLC, all inquiries specifically for Mr. Boyd to the Killian Law Firm since January of 2018 through several emails wherein Defendants admit fault for this occurrence.

27. Defendants have used this platform where people have specifically searched for Roy Boyd or Boyd Law Firm and clicked on their various sites to divert business away from Roy Boyd and Boyd Law Firm and redirect the callers or internet visitors to the Killian Law Firm, a competitor.

28. Defendants have literally taken the identity, reputation and goodwill of Roy Boyd and Boyd Law Firm and allowed a competitor's law firm to receive the benefit of inquiries specifically seeking Roy Boyd or Boyd Law Firm.

29. Mr. Boyd has requested on several occasions an accounting of the specific tracking phone numbers and tracking URLs which will show the number of times someone called under a tracking phone number for Roy Boyd or Boyd Law Firm or searched for Roy Boyd or Boyd Law Firm under a tracking URL and was redirected to the Killian Law Firm. Defendants have promised but failed to provide that information.

### III. CAUSES OF ACTION

### COUNT 1: NEGLIGENCE

30. Mr. Boyd re-alleges and incorporates by reference all allegations contained in the preceding paragraphs as if fully alleged herein.

31. Mr. Boyd paid Defendants to advertise for him and the Boyd Law Firm on Defendants' directories.

32. Defendants had a duty to direct inquiries for Mr. Boyd and the Boyd Law Firm only to those entities and no one else, especially not a competitor.

33. Defendants breached that duty by instead directing inquiries to Mr. Boyd's competitor, the Killian Law Firm. All of this was done through the contract involving the Killian Law Firm, Bob Killian, and Defendants.

34. As a result, Mr. Boyd sustained damages and lost cases that otherwise would have been referred to him.

35. Defendants' negligence was the proximate cause of Mr. Boyd's lost cases and all injuries and damages Mr. Boyd sustained.

### COUNT 2: USURPATION OF PROPERTY RIGHT IN NAME AND/OR IDENTITY THEFT

36. Mr. Boyd re-alleges and incorporates by reference all allegations contained in paragraphs 1 through 29 of this Complaint, above, as if fully alleged herein.

37. Because of Defendants' actions and/or omissions, potential clients of Roy Boyd and Boyd Law Firm were led to believe that Mr. Boyd may no longer have a law firm since all inquiries for Mr. Boyd or Boyd Law Firm were directed to the Killian Law Firm, leading potential clients to believe that all enquiries for Roy Boyd were now to be directed to the Killian Law Firm.

38. This is tantamount to usurpation of Mr. Boyd's property right in his name, as it communicated that Mr. Boyd was no longer practicing and/or had retired, which harmed Mr. Boyd's reputation.

39. This is also tantamount to identity theft, since Defendants' actions and/or omissions caused Mr. Boyd's identity to become subsumed by that of Mr. Killian and/or the Killian Law Firm.

40. As a direct and proximate result of Defendants' actions and/or omissions, Mr. Boyd's reputation was harmed.

41. Defendants are thus liable to Mr. Boyd for usurpation of his property right in his name and/or identity theft.

### COUNT 3: LIABILITY UNDER GEORGIA'S FAIR BUSINESS PRACTICES ACT

42. Mr. Boyd re-alleges and incorporates by reference all allegations contained in paragraphs 1 through 29 of this Complaint, above, as if fully alleged herein.

43. Defendants represented that they were providing advertising services for Mr. Boyd and his firm, when, in fact, they were not advertising for those entities and instead were advertising for Mr. Boyd's competitor. All of this was done through the contract involving the Killian Law Firm, Bob Killian, and Defendants.

44. Defendants thus represented that their services had sponsorship, approval, characteristics, uses, or benefits that they did not have.

45. As a result of Defendants' deceptive and unfair acts, Mr. Boyd has sustained damage in the form of lost cases and harm to his identity, reputation, and goodwill.

## COUNT 4: LIABILITY UNDER GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT

46. Mr. Boyd re-alleges and incorporates by reference all allegations contained in paragraphs 1 through 29 of this Complaint, above, as if fully alleged herein.

47. As stated above, Defendants represented that they were providing advertising services for Mr. Boyd and his firm, when, in fact, they were not advertising for those entities and instead were advertising for Mr. Boyd's competitor. All of this was done through the contract involving the Killian Law Firm, Bob Killian, and Defendants.

48. Defendants thus represented that their services had sponsorship, approval, characteristics, uses, or benefits that they did not have.

49. As a result of Defendants' deceptive trade practices, Mr. Boyd has sustained damage in the form of lost cases and harm to his identity, reputation, and goodwill.

## COUNT 5: ATTORNEYS' FEES

50. Mr. Boyd re-alleges and incorporates by reference all allegations contained in paragraphs 1 through 29 of this Complaint, above, as if fully alleged herein.

51. Defendants have acted in bad faith, have been stubbornly litigious, and have caused Mr. Boyd unnecessary trouble and expense.

52. Accordingly, pursuant to the above-mentioned statutes, Defendants are liable to Mr. Boyd for attorneys' fees and costs of litigation.

## IV. INJURIES AND DAMAGES

53. As a result of Defendants' acts and/or omissions, Mr. Boyd has lost potential clients and also lost past clients who Googled his name and were led to believe he must have retired, since all information for his law firm was redirected to the Killian Law Firm.

54. Due to Defendants' acts and/or omissions, potential clients were diverted away from the Boyd Law Firm and to that firm's competitor, the Killian Law Firm.

55. Because of Defendants' actions and/or omissions, potential clients of Roy Boyd and Boyd Law Firm were led to believe that Mr. Boyd may no longer have a law firm since all inquiries for Mr. Boyd or Boyd Law Firm were directed to the Killian Law Firm, leading potential clients to believe that all enquiries for Roy Boyd were now to be directed to the Killian Law Firm.

56. As a result, over the course of two years, Mr. Boyd's firm lost income.

57. Mr. Boyd is entitled to recover damages for the publication of misinformation to all persons whom the misinformation reached or was expected to reach.

58. Through their actions, Defendants have harmed Mr. Boyd's reputation, usurped his property right in his name, and stolen his identity. Generally, Defendants' platforms with their various entities, appear on approximately fifty percent of the various URLs which one can click on to be directed to a specific person whom they are seeking to find.

59. Since Mr. Boyd has suffered injury and damages as a result of Defendants' intentional violations of Georgia's Fair Business Practices Act, he is entitled to recover his general and exemplary damages.

WHEREFORE, Plaintiff Roy J. Boyd, Jr., prays:

a. That summons and process be issued and served upon Defendants;

b. For a trial by a jury of 12 people;

c. That he recover compensatory damages;

d. That he recover exemplary damages;

e. That he recover attorneys' fees and all costs of litigation; and

f. That he recover such other and further relief as the Court deems just and proper.

Respectfully submitted this 19th day of April, 2021.

/s/ **Brent J. Savage**
Brent J. Savage
Georgia Bar No. 627450
Samuel L. Mikell
Georgia Bar No. 241146

SAVAGE, TURNER, PINCKNEY & SAVAGE
102 East Liberty Street, 8th Floor
Savannah, Georgia 31401
(912) 231-1140
Fax: (912) 232-4212

bsavage@savagelawfirm.net
smikell@savagelawfirm.net